ALBERT G. STORY

v.

WARREN SPRINGER.

*Filed at Mt. Vernon January 14, 1895.*

1. APPEAL—*how far conclusions of trial judge are binding.* The conclusions of the trial judge on conflicting evidence should not be disregarded, unless clearly and manifestly erroneous.

2. EVIDENCE—*presumption from inadequacy of consideration—how overcome.* The presumption that a deed absolute on its face is intended as a mortgage, arising from a gross inadequacy of consideration, will not control, where the accompanying circumstances warrant the inference that it was the intention that the grantee should have a share in the profits expected to be realized from a subsequent sale of the premises.

*Story* v. *Springer,* 43 Ill. App. 495, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

FAY & GRIGGS, for plaintiff in error.

MILLER, STARR & LEMAN, for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was a bill in chancery, brought by Albert G. Story, against William Springer and another, praying to have a deed absolute on its face declared to be a mortgage, and to be permitted to redeem therefrom. It appears from the pleadings and proofs that on April 8, 1889, John Cochrane, of New York, entered into an agreement with Eleanor A. Allan, of Chicago, by which he agreed to convey to her certain premises in Chicago for $28,000, $1000 to be paid in cash at the date of the agreement, $4000 in sixty days thereafter, and the remaining $23,000 by five promissory notes, one for $3000, payable on or before the expiration of one year, and four notes for $5000 each, payable on or before the expiration of five years

after the date of the agreement, the notes to be executed by Eleanor A. Allan and James M. Allan, her husband, and to bear interest at the rate of six per cent per annum, payable semi-annually, and to be secured by deed of trust upon the premises sold. The agreement further provided that the purchaser should, within six months from the date of the agreement, make improvements or repairs on the premises to the amount of $3000.

When the sixty days had expired Mrs. Allan had paid the $1000 payable at the date of the agreement, and $1000 of the $4000 payable sixty days thereafter. She then asked for and obtained a modification of the agreement, extending the payment of the residue of the $4000 to August 8, 1889, on condition of her paying up certain accrued interest, which was done, the modified agreement expressly providing that in case of default in payment the contract should be at an end, and that all payments which had been made, as well as the improvements put upon the premises by Mrs. Allan, should be forfeited as liquidated damages.

Mrs. Allan is a daughter and James M. Allan the son-in-law of Albert G. Story, the complainant. Story was in feeble health, and James M. Allan usually acted as his agent in business matters, and it seems probable, from the evidence, that Story was the real purchaser from Cochrane, although the agreement was taken in the name of his daughter. But however that may be, on August 8, 1889, the $3000 then due was paid, and the agreement was on that day assigned to Story. On October 8, 1889, the accrued interest was paid, and Cochrane gave an extension of sixty days, viz., until December 7, 1889, in which to make the improvements.

On December 8, 1889, or shortly prior thereto, the improvements not having been made, it was arranged between the parties that instead of making the improvements the purchaser should pay an additional sum of $3000 of the purchase money, and that the land should

be then conveyed, and the notes and deed of trust for $20,000, the residue of the purchase money, executed by the purchaser. About the time this arrangement was made, Allan, as the agent and on behalf of Story, called on Warren Springer for the purpose of trying to obtain from him some money, and the only controversy in the case arises upon the evidence of what took place between Allan and Springer, or rather between Allan and William T. Grower, Springer's agent, to whom Springer referred Allan, and who carried on the negotiations on Springer's behalf.

It is not disputed that, as a result of these negotiations, Springer furnished and paid over to Allan the sum of $3750, out of which the $3000 was paid Cochrane; that the land was then conveyed to Mrs. Allan, and the notes for $20,000 and the deed of trust stipulated for in the agreement given back, and that the premises were then conveyed to Springer by a deed absolute on its face. It also appears that Allan and Grower went to an attorney and stated to him the terms of the transaction, and employed him to put the same in writing, and that the following instrument was drawn up and signed by Mrs. Allan and also by her husband, but which Springer, when it was presented to him, refused to sign:

"This agreement, made this fourteenth day of December, 1889, by and between Warren Springer, of the city of Chicago, Cook county, Illinois, party of the first part, and Eleanor A. Allan, of the same place, party of the second part, witnesseth, as follows: Whereas, the said party of the first part is the owner of the following lands in the said city of Chicago, to-wit: lots four (4), five (5) and six (6), except the north five feet of said lot four (4), in Sherman's subdivision of lots four (4) and five (5) and six (6), in block one (1), in Clark's addition to Chicago, with lot one (1), in block one (1), and the west half ($\frac{1}{2}$) of block two (2), in the assessor's division of the south-west fractional quarter of section twenty-two (22), in township

thirty-nine (39), north, range fourteen (14), east of the
third (3d) principal meridian, reference being hereby
made to a map of said E. L. Sherman's subdivision re-
corded on April 14, 1855, in the recorder's office of Cook
county, in book 85 of maps, page 109 ; and whereas, the
title to said land in said party of the first part is subject
to the taxes and special assessments of 1889, and to
unpaid water rents, and to a certain deed of trust dated
October 8, 1889, made by Albert G. Story and his wife
and said party of the second part and her husband, con-
veying said lands to Edwin F. Bayley, trustee, to secure
four notes made by the grantors in said deed of trust, of
even date herewith, for $5000 each, payable to the order
of John Cochrane, on or before five years from date, with
interest at the rate of six per cent per annum, payable
semi-annually:

"Now, therefore, it is agreed between the parties
hereto, that in consideration of the sum of $50 this day
paid by the said party of the second part to the said
party of the first part, the said party of the first part
shall and will, in case the said party of the second part
shall, within six months from the date thereof, pay to
the said party of the first part the full sum of $7000 in
addition to the aforesaid sum of $50, quit-claim and re-
lease to the said party of the second part all interest in
the above described lands, expressly subject to all taxes,
special assessments and water rents now or at the time
of such conveyance resting upon the said lands, and to
.the said deed of trust, and all of the principal and inter-
est and other charges therein provided for.   It is further
agreed by and between the parties hereto, that time shall
be of the essence of this agreement and of all of the pro-
visions thereof, and that in case the said party of the
second part shall fail, from whatever cause, to pay to
the said party of the first part the full sum of $7000 afore-
said within the period of six months from the date of this
agreement, then and in such case all the right and inter-

est of the said party of the second part under this agreement, and in and to said lands and every part thereof, shall absolutely cease and determine without any demand or notice whatever, and without any return of the said sum of $50, or any part thereof, to said party of the second part.

"This agreement shall remain in the hands of James E. Munroe, of the city of Chicago, until performed within said period of six months, or until default made in the performance thereof by said party of the second part, and it shall not be recorded in any public office; and in case said party of the second part shall not pay said sum of $7000 within the time above limited, in that behalf, then this agreement shall be delivered by the said Munroe, for cancellation, to said party of the first part.

"In witness thereof, the said parties hereto have hereunto set their hands and seals the day and year first above written.

ELEANOR A. ALLAN,     [Seal.]
JAMES M. ALLAN.       [Seal.]"

It is insisted, on the one hand, that the real transaction between the parties, as shown by the evidence, was a loan by Springer to Story of the sum of $3750, and for which the sum of $7000 was to be paid at the expiration of six months, and that the premises were conveyed to Springer merely as security for such loan. On the other hand, it is contended that the transaction was a purchase of the property by Springer, and a contract to re-sell it to Story, at the expiration of six months, for $7000.

In this controversy no question of law is involved which requires any extended discussion, for it is elementary law, supported not only by the uniform current of judicial decisions but also by the express provisions of our statute, that "every deed conveying real estate which shall appear to have been intended only as security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage."

And it is also settled law, that a deed absolute on its face is not to be considered a mortgage unless it is made to appear, clearly and satisfactorily, that it was so intended at the time of its execution. *Strong* v. *Strong*, 126 Ill. 301, and cases there cited.

There being no room for dispute as to the law, the only controversy presented by the record is purely one of fact, the evidence being to a very considerable degree conflicting. Upon the face of the written evidence the transaction appears to be an absolute sale of the property to Springer, with the privilege, on Story's part, to re-purchase within six months by paying $7000. Taking the deed to Springer and the instrument signed by Mrs. Allan and her husband, but not signed by Springer, as truly embodying the transaction, such is undoubtedly its character. The witnesses upon whose testimony chief reliance is placed, are Allan on the one hand and Grower on the other, and their testimony is in direct conflict. Allan's testimony tends to show that the transaction was a loan of money by Springer, and that the property was conveyed to him merely as security for the loan, while Grower's testimony tends to show that both he and Springer absolutely refused to make a loan, or to treat with Allan upon any other basis than that of an absolute purchase of the property, giving Story the privilege of buying it back in six months at an enhanced price. The testimony of Springer and of the attorney who drew up the contract of re-purchase, so far as it goes, tends to corroborate Grower rather than Allan.

Without attempting to analyze the evidence in detail, it will be sufficient for our present purpose to say, that the judge of the Superior Court heard and saw the witnesses, and had therefore a much better opportunity of judging of their relative credibility and fairness than is afforded us by the record, and his conclusions, where the evidence is conflicting, should not be disregarded, unless we are able to see that they are clearly and manifestly

erroneous. Then, again, the Appellate Court has examined and reviewed the evidence, and has reached the same conclusion. But, independently of the findings of the courts below, we have examined the evidence as it appears in the record for ourselves, and are satisfied from such examination that the courts below have reached the proper result.

It is insisted that Story's equity in the property, at the time of its conveyance to Springer, was worth very much more than the price Springer paid for it, and that that circumstance should be given controlling effect in determining whether the transaction was a loan of money by Springer or a purchase of the property. While inadequacy of price is often regarded as a circumstance of importance in cases of this character, yet we do not think that, under the facts of this case, it should be given the importance claimed for it, even if such inadequacy existed. The evidence is far from clear as to what the cash value of the property was at the time of the conveyance to Springer, some of Story's witnesses placing it at from $10,000 to $15,000 in excess of the $20,000 incumbrance, while others place the value much lower. It appears by the testimony of both Grower and Springer, that Springer did not regard it of sufficient value to justify his taking a second mortgage on it for $3750. The property seems to have been bought by the Allans or by Story for speculative purposes, and their estimate of its value was naturally quite high. Story was anxious to hold on to the property, so as to be able to realize the profits which he anticipated making. But an installment of the purchase money was about maturing which he had not the means to pay, and the consequences of default were likely to be the loss of the property, including all that had been expended ·upon it. In view of Allan's faith in the investment, and to give him a further chance to realize at least a portion of his anticipated

profits, Grower, according to his testimony, was willing to allow him to re-purchase, upon the basis of his dividing with Springer the profits which he would make if he succeeded in effecting a sale of the property according to his hopes. It was therefore agreed that in case Allan made arrangements, within six months, by which he could make other disposition of the property, Springer should be paid $3250 of the profits, which was estimated to be about one-half, and that Story should have the residue. As this is not an improbable explanation of the transaction, it would seem that the ordinary presumption arising from a gross inadequacy of consideration ought not to control.

After carefully considering the evidence, we see no ground for dissenting from the conclusion reached by the Appellate Court, and the judgment of that court will accordingly be affirmed.

*Judgment affirmed.*